```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

NATIXIS FINANCIAL PRODUCTS LLC,

                    Plaintiff,              10 Civ. 3656

     -against-                               OPINION

BANK OF AMERICA, N.A.,

                    Defendant.

-----------------------------------------X
```

A P P E A R A N C E S:

        Attorneys for Plaintiff

        EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C.
        805 Third Avenue
        New York, NY 10022
        By:  Eric R. Levine, Esq.
             Kiah Beverly-Graham, Esq.


        Attorneys for Defendant

        MUNGER, TOLLES & OLSON LLP
        355 South Grand Avenue, 35th Floor
        Los Angeles, CA 90071-1560
        By:  Marc T.G. Dworsky, Esq.
             Richard C. St. John, Esq.
             Eric P. Tuttle, Esq.

**Sweet, D.J.**

Plaintiff Natixis Financial Products LLC ("Natixis" or the "Plaintiff") has moved pursuant to Rules 16(b) and 37(a) of the Federal Rules of Civil Procedure to (i) compel discovery from defendant Bank of America, N.A. ("BoA" or the "Defendant") and (ii) to reopen fact discovery for the limited purpose of allowing Natixis to serve additional document demands. Based on the conclusions set forth below, the motion is denied.

The failure of Ocala Funding, LLC ("Ocala"), a residential mortgage backed securitization trust that collapsed in 2009, resulted in actions by BNP Paribas ("BNP"), Deutsche Bank ("DB") and Natixis against BoA. The actions by BNP and DB (the "Related Actions") have now settled. This action has been mediated unsuccessfully to date, and its future course is placed at issue by this motion. The Related Actions of BP and DB involved $1.7 billion of Ocala's senior notes. Natixis' claim involves $10 million of subordinated notes. The relationship between the Related Actions and this action has been carefully negotiated by the parties. The resolution of this motion requires a determination with respect to the scheduling of Natixis' burden of proof.

1

**Prior Proceedings**

The failure of Taylor, Bean & Whitaker Mortgage Corp. ("TBW") in 2009, once one of the country's largest non-bank mortgage originators, was a result of an elaborate financial fraud. As part of the fraud, TBW drained almost all the assets of Ocala, a wholly-owned funding vehicle that TBW created to accelerate its origination business. When TBW failed, Ocala's noteholders went unpaid. The collateral supposedly backing their investments -- a revolving pool of newly originated loans -- had been double- or triple-pledged or already sold by TBW.

In 2009, DB and BNP filed breach of contract and related claims against BoA. In April 2010, Natixis filed its own complaint against BoA in New York Supreme Court. The case was removed and related to DB's and BNP's actions pending before this Court. In June 2011, Natixis filed its First Amended Complaint, asserting the breach of contract and breach of fiduciary duty claims that had survived BoA's motion to dismiss the DB and BNP actions. BoA, DB, and BNP engaged in extensive motion practice surrounding DB's and BNP's attempts to file Second and Third Amended Complaints.

Under the initial Rule 26(f) report and order dated November 2011, Natixis and BoA set deadlines for the close of fact discovery, exchange of opening and rebuttal expert reports, close of expert discovery, and summary judgment briefing that mirrored those in the related actions. (Ex. 8 at 2, 6.) Natixis was permitted to attend fact depositions noticed by DB and BNP, and would be given up to two additional hours at those depositions. (Id. at 3-4.) Natixis would also be permitted up to 10 fact depositions of its own (id. at 3), though it ultimately elected not to take any. If Natixis elected to participate in any expert depositions noticed by BoA, BNP, or DB, then Natixis would similarly be given up to two hours of extra deposition time. (Id. at 5.)

Until fact discovery ended in 2013, Natixis produced documents to BoA and received copies of BoA's productions to DB and BNP. Natixis asked questions of five of the 27 BoA fact witnesses who were deposed and served two sets of document requests that generally sought copies of certain documents exchanged between other parties. BoA deposed one Natixis witness, its Rule 30(b)(6) designee.

In April 2013, Natixis and BoA stipulated to staggered deadlines for expert discovery and summary judgment motions: opening and rebuttal expert reports in the Natixis action would be exchanged about two months after the corresponding reports were exchanged in the DB and BNP actions; the close of expert discovery would occur in the Natixis action about three weeks after the deadline in the Related Actions; and the summary judgment briefing schedule provided that opening briefs would be due in this action about 45 days after motions in the related actions but replies would be filed at the same time, so that all motions would be heard together by the Court. (Ex. 10 at 1-2.) This stipulation recited the parties' belief that "such a sequence will allow for significant efficiencies, and in particular will allow Natixis to avoid duplicating efforts that BNP and DB are undertaking in the related actions." It also contains a representation by Natixis that "it will refrain from submitting duplicative papers, and will instead endeavor to join BNP and/or DB's papers wherever possible." (Id. at 2.)

Fact discovery in the Natixis action closed in the spring of 2013. (Ex. 10.)

4

BoA, DB, BNP, and Natixis subsequently stipulated to several extensions of the expert deadlines and to vacate the summary judgment briefing schedule previously ordered, on the promise to meet and confer in the future on an appropriate briefing schedule. (Exs. 11-13.)

Under the final order entered before this action was stayed (Ex. 13), the schedule was as follows:

| Event | DB and BNP Actions | Natixis Actions |
|---|---|---|
| Opening Expert Reports | 11/25/13 | 1/20/14 |
| Rebuttal Expert Reports | 3/3/14 | 5/2/14 |
| Close of Expert Discovery | 5/16/14 | 6/16/14 |

On November 25, 2013, as per the stipulated schedule, DB, BNP, and BoA disclosed opening expert reports. A week later, counsel for Natixis emailed counsel for BoA, asking: "Did the parties exchange expert reports as scheduled on November 25? If so, could I trouble you to forward along copies?" (Ex. 14.) BoA confirmed that the reports had been exchanged, stated that it would "exchange its expert reports in the Natixis action with Natixis on January 20, as previously stipulated." (Id.) When Natixis continued to press for the expert reports in early December, BoA reiterated that its own reports would be exchanged with Natixis on the deadline in the Natixis action, and that

5

Natixis should seek DB's and BNP's reports from those parties with whom BoA had assumed Natixis was coordinating. (*Id.*; Exs. 15, 16.) BoA noted, among other things, that Natixis had no right to receive advance notice of BoA's expert opinion and analysis, and that the burden of cooperating with DB and BNP, as well as the risk of failing to cooperate, fell upon Natixis. (Ex. 16.)

Natixis did not move to compel or otherwise raise the issue with the Court. On December 24, 2013, with the deadline for expert reports fast approaching, Natixis proposed that its case be stayed pending resolution of the related actions. (Ex. B.) A stipulated order staying the action "pending dismissal or entry of judgment in both of the Related Actions" was entered January 16, 2014, four days before opening reports were due to be exchanged. (Ex. 17.)

DB, BNP, and BoA exchanged rebuttal expert reports in March 2014, and deposed numerous expert witnesses over many days in the summer of 2014, followed by three additional fact witnesses. The parties then exchanged cross-motions for summary judgment in November 2014 and opposition papers in February 2015.

Pursuant to the parties' stipulations, as ordered by the Court, none of the summary judgment material was publicly filed. (Exs. 19, 20.) The parties had scheduled mediations to take place while briefing was ongoing. (St. John Decl. ¶ 5.) Both cases settled before reply briefs were exchanged, and the Related Actions were dismissed in April 2015. (Exs. 21, 22.)

BoA and Natixis then engaged in settlement discussions culminating in a mediation in June 2016, but did not reach a settlement. Soon thereafter, the parties conferred with respect to a schedule including a decision on this motion to compel, and the timing of opening expert reports, rebuttal reports and summary judgment motions.

On July 26, 2016, an order was entered lifting the stay and directing the parties to meet and confer on a schedule for discovery (or, failing agreement, to submit proposed schedules to the Court for resolution). (Ex. 23.) The parties have continued to meet and confer. Under Natixis's latest proposal, its opening reports would be due in February 2017, rebuttal reports in April 2017, summary judgment motions in

September 2017, and summary judgment oppositions in November 2017. (Ex. A.)

The instant motion was heard and marked fully submitted on October 13, 2016.

**The Timing of any Summary Judgment Motions will be the Subject of a Meet and Confer**

The parties in the Related Actions agreed upon a filing date for submission of motions and cross motions for summary judgment and for rebuttal submissions. Natixis has sought a schedule to compel BoA to produce expert reports and to file its summary judgment six months and a year respectively before its own deadline to file. The procedure followed in the Related Actions is more appropriate.

At the time the stay was entered there was no schedule for summary judgment briefing in this action. Natixis would not have obtained BoA's, DB's, or BNP's briefing before filing its own motion for summary judgment, opposition, and reply papers. BoA, DB, and BNP stipulated, with the Court's approval, that their papers would not be filed publicly until after reply briefs were served, and BoA, DB, and BNP settled before that.

8

Natixis has contended that there is a "strong presumption of public access" to summary judgment papers (Mot. 18), citing *Lugosch v. Pyramid Co.*, 435 F.3d 110, 121 (2d Cir. 2006). However, that presumption is based on the need for federal court "accountability" and public "confidence in the administration of justice," and it attaches only to "judicial documents": documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 119. The papers at issue here were never submitted to the Court, and so no such presumption applies.

Natixis has contended that BoA's briefs may contain "admissible party statements." (Mot. 14 & n.61.) That logic does not apply to BNP's or DB's briefs. BoA has agreed to produce BoA's summary judgment papers from the related actions after Natixis' corresponding briefs in this case are due. (Memo Opp. p. 14.) To the extent the supporting papers for the summary judgment briefs in the related actions include percipient witness declarations or affidavits, or documentary exhibits not previously produced, BoA has agreed those materials are properly discoverable and will produce them now.

BoA is willing to produce to Natixis the papers it served on DB and BNP when the time comes for the parties to exchange summary judgment motions in this case.

**Expert Discovery Will Not Be Advanced**

This Court under Rule 26 has discretion to control the sequence and timing of discovery and to impose limitations or conditions on that discovery, including expert discovery. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 593 n.13 (2007); Fed. R. Civ. P. 26(a)(2)(D). As the party with the burden of proof, Natixis would in the usual course be required to disclose its expert testimony on those claims before BoA. See Manual for Complex Litig. (4th) § 11.481; Fed R. Civ. P. 26, Advisory Committee Notes, 1993 Amendment, subdiv. (a)(2) ("in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue"). Natixis seeks to obtain advance copies of BoA's expert reports before committing to an expert position on its own claims on the grounds that BoA has had the advantage of expert discovery in the Related Actions.

Courts have recognized that allowing one party to view the opposing party's expert reports before having to submit its own opening expert reports would afford that party an unfair advantage. See, e.g., *USCO S.p.A. v. Valuepart, Inc.*, 2015 WL 1898013, at *6-7 (W.D. Tenn. Apr. 27, 2015) ("allowing one party's expert to view the expert report of another party before submittal of [its opening report] is an unfair advantage"); *Queen v. Int'l Paper Co.*, 2006 WL 1229010, at *3-4 (N.D.N.Y. May 5, 2006) ("[Plaintiff] has enjoyed the benefit of reviewing [defendant's] expert reports before [plaintiff's expert] prepared and served her report. This would afford [plaintiff] an unintended and unfair tactical advantage and would operate to the material prejudice of [defendant]."); *Duval v. U.S. Xpress Enterprises, Inc.*, 2005 WL 6021864, at *3-4 (N.D.N.Y. Oct. 13, 2005) (plaintiff's opportunity to "utilize defendants' expert report in the preparation of her own expert reports" afforded plaintiff "unfair tactical advantages").

Such a tactical advantage can arise when one party is involved in parallel actions against multiple adversaries with staggered expert discovery, and have taken steps to prevent it. For example, in *Spectrum Pharm., Inc. v. Sandoz Inc.*, 2014 WL

3000130, at *1 (D. Nev. July 1, 2014), a patentee submitted an expert report on patent validity and argued that "if this report were to be disclosed at this point, such disclosure could injure [the patentee's] competitive posture in a companion case . . . that involves the same, or similar, invalidity arguments as this litigation" and in which expert reports has not yet been exchanged; specifically, "providing the opposing party in that [companion] case with its expert submission [in this case] would give that party an unfair advantage." The patentee therefore requested that the Court "seal this expert report until such time as they have served expert reports in the [companion case]." *Id.* The court agreed, ordering the expert report "sealed at this time, pending the expert deadlines in the [companion case]," because its immediate disclosure "could injure [patentee's] competitive posture in the [companion case]." *Id.* at *2; see also Spectrum Pharm., Inc. v. Sandoz Inc.*, 2013 WL 6844445, at *2 (D. Nev. Dec. 26, 2013) (similar, and granting patentee's request that it be allowed "to file this expert report on the public record within one day of serving it on the opposing party in the Delaware Litigation," and to file it under seal in the interim).

*FHFA v. Nomura Holding Am. Inc.*, 2014 WL 4412388 (S.D.N.Y. Sept. 8, 2014), on which Natixis relies (Mot. 21-22), is not to the contrary. That case involved a plaintiff seeking to depose a defendant's fact witnesses after receiving the defendant's expert reports and the court in that case recognized that allowing the plaintiff to do so created an unfair "tactical advantage," and that the normal "sequence would have been ideal." *Id.* at *7. But, due to the defendant's dilatory conduct, the only alternatives in that case would have been for the plaintiff: (a) not to take any fact depositions at all; (b) to have taken all of its fact depositions before receiving any of the witnesses' documents; and/or (c) not to be able to bring a summary judgment motion. *Id.* In the court's view, the extreme prejudice to the plaintiff in those outcomes outweighed the prejudice to the defendant in allowing the plaintiff to take fact depositions after seeing the defendant's expert reports. To the extent that the process of resolution has advantaged BoA it has earned that advantage as part of the resolution of the Related Actions.

As to DB's and BNP's experts' opening reports, Natixis had a full and fair opportunity to coordinate with DB and BNP in the preparation of expert reports. Natixis should not now expect

13

to obtain those reports through discovery from BoA. See *Peterson v. Wright Medical Tech., Inc.*, 2013 WL 655527, at * 7 (C.D. Ill. Feb. 21, 2013) ("Plaintiff has not explained any basis for obtaining expert reports prepared for other plaintiffs in related litigation. Those plaintiffs are not parties herein, and the reports they commissioned are more properly obtained from counsel for those other plaintiffs rather than from [defendant].").

"Preparation and exchange of the expert disclosures compels parties to focus on the issues and the evidence supporting or refuting their positions" and "to be prepared for trial"; moreover, "the cost and burden of preparing disclosures forces parties to consider whether to designate a particular person as an expert witness and may discourage or limit the use of excessive numbers of experts." Manual for Complex Litig. 4th § 23.341. In seeking to bypass preparation of its own expert reports, Natixis would also skip these important steps.

Natixis contends that its own experts should simply be able to adopt the opinions contained in those reports without having had any involvement in their preparation. (Mot. 14 & n.60.) Such an approach is unwarranted. See *Malletier v. Dooney*

14

& *Bourke, Inc.*, 525 F. Supp. 2d 558, 664, 666 (S.D.N.Y. 2007) (explaining that "the expert witness must in the end be giving his own opinion. He cannot simply be a conduit for the opinion of an unproduced expert"; and excluding testimony of an expert who purported to rely on another expert over whom he "exercised little if any supervision"); *Jung v. Neschis*, No. 01 Civ. 6993(RMB)(THK), 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007) (Courts "distinguish between the rather prejudicial circumstance of experts relying upon, or reciting, the opinions of other experts not subject to cross-examination, and modern evidence law's apparent recognition that experts often rely on facts and data supplied by third-parties, including other experts."); see also *Quiles v. Bradford-White Corp.*, No. 10 Civ. 747, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012) ("[A]n expert's opinion must be based upon his own application of principles within his expertise to the facts of the case. An expert cannot simply parrot the findings of another arrived at in another context."); *U.S. Bank N.A. v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015) ("One expert is permitted to rely on facts, opinions, and data not of the expert's own making— including analyses performed or findings made by another expert in the case . . . . One expert may not, however, merely adopt another expert's opinions as his or her own reflexively and

15

without understanding the materials or methods underlying the other expert's opinions."

**Conclusion**

Based on the conclusions set forth above, Natixis' motion to compel early disclosure of summary judgment and expert materials under Rule 37 is denied and the parties are directed to meet and confer with respect to the scheduling of further proceedings in this action.

It is so ordered.

New York, NY
December 7, 2016

ROBERT W. SWEET
U.S.D.J.