UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

NATIXIS FINANCIAL PRODUCTS LLC,                    10 Civ. 3656

                Plaintiff,                          OPINION

   -against-

BANK OF AMERICA, N.A.,

                Defendant.
------------------------------------------X

A P P E A R A N C E S:


      <u>Attorneys for Plaintiff</u>

      EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C.
      805 Third Avenue
      New York, NY 10022
      By:  Eric R. Levine, Esq.
           Eric P. Heichel, Esq.


      <u>Attorneys for Defendant</u>

      MUNGER, TOLLES & OLSON LLP
      350 South Grand Avenue, Fiftieth Floor
      Los Angeles, CA  90071-3426
      By:  Richard C. St. John, Esq.
           Gregory D. Phillips, Esq.
           Eric P. Tuttle, Esq.
           Adam I. Kaplan, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**Sweet, D.J.**


Plaintiff Natixis Financial Products LLC ("Natixis" or the
"Plaintiff") has moved pursuant to Federal Rules of Civil
Procedure 15(a) and 16 (b)(4) for leave to file a second amended
complaint (the "SAC") in this action against Defendant Bank of
America, N.A. ("BoA" or the "Defendant") arising from the August
2009 collapse of Ocala Funding, LLC ("Ocala"), a complex
mortgage-backed securitization trust.


For the reasons set forth below, Plaintiff's motion is
denied in part and granted in part.


## Prior Proceedings


Much of the factual and procedural history of this case has
been described by the Court in its prior Opinions. See Natixis
Fin. Prod. LLC v. Bank of Am., N.A., No. 10 Civ. 3656 (RWS),
2016 WL 7165981 (S.D.N.Y. Dec. 7, 2016). See generally BNP
Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375,
381-94 (S.D.N.Y. 2011) ("BNP I"). The following is drawn from
those Opinions, the Plaintiff's First Amended Complaint ("FAC,"
Dkt. No. 11), and declarations submitted in regard to the
instant motion.

This case arises from the failure of Taylor, Bean &
Whitaker Mortgage Corp. ("TBW"), which at the time was one of
the nation's largest non-bank home mortgage originators. FAC
¶ 37. TBW collapsed in 2009 after an elaborate fraud that, over
many years, drained nearly all the assets of Ocala, a wholly-
owned funding vehicle that TBW created in 2005 to accelerate its
origination business. See FAC ¶¶ 4-11, 19-20, 37-42, 193-206. In
short, TBW had double-pledged, triple-pledged, or already sold
collateral intended to back investments, which left Ocala
noteholders unpaid following TBW's collapse. See Natixis, 2016
WL 7165981, at *1.

Ocala was originally governed by a set of agreements dated
April 5, 2005 (the "2005 Agreements"), including a 2005 Security
Agreement under which BoA's predecessor LaSalle Bank operated as
Collateral Agent.[1] Declaration of Richard St. John dated November
20, 2017 ("St. John Decl.") Ex. 1; see FAC ¶¶ 12-14. On March
27, 2006, the 2005 Agreements were superseded by restated

---

[1]     These agreements, which governed the facility for the
origination, sale, and purchase of the mortgages through TBW,
included four contracts entered into between Ocala and BoA that
have been the focus both of the instant and related litigation:
the Security Agreement, the Depositary Agreement, the Custodial
Agreement, and the Base Indenture. See FAC ¶ 43; BNP I, 778 F.
Supp. 2d at 381, 384-92.

2

agreements (the "2006 Agreements"), including an amended 2006

Security Agreement. St. John Decl. Ex. 2. On June 30, 2008, the

2006 Agreements were superseded by restated agreements (the

"2008 Agreements"), including an amended 2008 Security

Agreement. St. John Decl. Ex. 3.

As part of its operation, Ocala issued two classes of

notes: senior notes and subordinated notes. FAC ¶ 3. Deutsche

Bank ("DB") and BNP Paribas ("BNP") held $1.7 billion of Ocala's

senior notes. Natixis, 2016 WL 7165981, at *1. According to the

FAC, Natixis purchased a total of $10 million subordinated notes

from Ocala: $3 million of notes on March 31, 2005; $2.5 million

of notes on April 4, 2006; and $4.5 million of notes on May 23,

2007. FAC ¶¶ 2, 45.

In November 2009, in the aftermath of the TBW collapse, DB

and BNP filed breach of contract and related claims against BoA.

See BNP I, 778 F. Supp. 2d at 381. DB and BNP filed amended

complaints in March 2010, and Natixis filed its own complaint

against BoA in New York Supreme Court in April 2010. See id.;

Dkt. No. 1. Natixis' case was removed to federal court and

assigned as related to DB and BNP's actions. See Dkt. Nos. 1, 8.

On March 23, 2011, BoA's motions to dismiss DB's and BNP's amended complaints were granted in part and denied in part. See BNP I, 778 F. Supp. 2d at 420. As relevant to the instant motion, DB's claims under the 2005 Agreements and 2006 Agreements were dismissed upon a determination that the 2005 Agreements and 2006 Agreements were superseded when the facility was restated in 2008 and, thus, that claims under the earlier agreements were barred. Id. at 401-02.

On June 11, 2011, Natixis filed its FAC. Dkt. No. 11. The FAC dropped Natixis' claim relating to the Custodial Agreement and added claims for breach of the Base Indenture and breach of fiduciary duty. See generally FAC. The FAC defined the "Ocala Agreements" as the "set of agreements entered into on or about June 30, 2008." Id. ¶ 39. In addition, the FAC stated that "the operative documents" for its claims were the "set of agreements entered into on or about June 30, 2008," FAC ¶ 39, and that those "final amended and restated agreements, by their terms, control the duties" of BoA, FAC ¶ 43; see also FAC ¶ 98 ("[T]he closing of the Ocala Agreements on June 30, 2008 . . . made these agreements the operative documents for the Subordinated Notes.").

Fact discovery took place between 2011 and 2013, with discovery coordinated among the parties in this action and the related DB and BNP actions. See Natixis, 2016 WL 7165981, at *1-2; Dkt. No. 47. By stipulation, fact discovery by Natixis of BoA closed in April 2013; BoA's fact discovery of Natixis closed in June 2013. Dkt. No. 38. The stipulated "Deadline for Amendment of Pleadings" was set on November 5, 2013. Dkt. No. 43.

On January 16, 2014, this matter was stayed pursuant to stipulation by the parties pending resolution of the related DB and BNP cases. Dkt. No. 47. In 2015, BoA settled with DB and BNP, at which point BoA and Natixis engaged in settlement discussions and a mediation in June 2016, which was unsuccessful. Dkt. No. 48, at 4. On July 26, 2016, the stay was lifted. Dkt. No. 50. Expert discovery began in January 2017 and was completed in August 2017. Dkt. Nos. 60, 66.

On October 27, 2017, Natixis moved for leave to file a SAC. Dkt. No. 71; see Declaration of Eric P. Heichel dated October 27, 2017 ("Heichel Decl.") Ex. A (attaching the proposed SAC). The instant motion was heard and marked fully submitted on November 29, 2017.

5

## The Applicable Standard

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, '[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). Where, as here, a motion for leave to amend is brought after the time period for amending pleadings has expired pursuant to a court's Scheduling Order, however, Rule 16(b)'s more stringent "good cause" standard, which is based on the "diligence of the moving party," must be "balanced against" the more "lenient standard under Rule 15(a)." Id. at 334 (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2003)); see Fed. R. Civ. P. 16(b)(4).

Tension between the mandates of Rules 15 and 16 has been noted by courts in this circuit, and fulfilling both requires considering, as relevant here, affording justice to a plaintiff, a plaintiff's good cause and diligence in seeking the amendment, and potential prejudice to the defendant. See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 176

6

(S.D.N.Y. 2014) (analyzing the Second Circuit judicial

landscape). No one factor is dispositive, and "a district court

has discretion to grant a motion to amend even where the moving

party has not shown diligence in complying with a deadline for

amendments in a Rule 16 scheduling order." Id.; see also Kassner

v. 2nd Ave. Deli., Inc., 496 F.3d 229, 244 (2d Cir. 2007) ("The

district court, in the exercise of its discretion under Rule

16(b), also may consider other relevant factors including, in

particular, whether allowing the amendment of the pleading at

this stage of the litigation will prejudice defendants.");

Castro v. City of N.Y., No. 06 Civ. 2253 (RER), 2010 WL 889865,

at *2 (E.D.N.Y. Mar. 6, 2010) ("[B]oth Rules should be

considered simultaneously, with of course, the plaintiff's

diligence considered as the primary factor.").


As a scheduling order was entered that set the deadline for

Plaintiff to amend its complaint for November 2013, Plaintiff's

request will be reviewed under Rule 16(b). See Trezza v. NRG

Energy, Inc., No. 06 Civ. 11509 (PKC) (DF), 2008 WL 540094, at

*6 (S.D.N.Y. Feb. 28, 2008) (holding that because plaintiff's

motion to amend "did not seek leave to amend until after the

deadline set by the Court's scheduling order, the controlling

standard here is not the standard found in Rule 15(a), but

rather the separate standard set out in Rule 16(b)"). Plaintiff

all but concedes Rule 16's applicability. See Pl.'s Mem. of Law in Supp. ("Pl.'s Mem.") at 13.

## Plaintiff's Motion to Amend is Granted in Part and Denied in Part

I.    The SAC

Unsurprisingly, the parties portray the changes between Plaintiff's FAC and its proposed SAC differently. According to Plaintiff, the SAC "removes the causes of action for breach of the Base Indenture and breach of fiduciary duty," "clarif[ies] the period of time in which Natixis suffered damages," and "contains additional minor amendments alleging additional details which serve to bring the pleading in line with discovery taken to date." Pl.'s Mem. at 1-2. Defendant, by contrast, contends that the SAC shifts the period of BoA's alleged breach from June 2008, when the 2008 Agreements were signed, to 2005, modifies what constitutes the "operative documents" underlying the alleged breach, and adds "a new allegation that Natixis did not 'consent' to the 2008 Agreements." Def.'s Mem. of Law in Opp. ("Def.'s Opp.") at 8.

II.  Good Cause for the Delay in Amending Has Not Been
     Established

The "primary factor" and, therefore, preliminary question
under Rule 16 is whether Plaintiff has demonstrated "good cause"
to file its motion after the established deadline. Castro v.
City of N.Y., No. 06 Civ. 2253 (RER), 2010 WL 889865, at *2
(E.D.N.Y. Mar. 6, 2010). "To show good cause, a movant must
demonstrate diligence before filing her motion, such that
despite the movant's effort, the deadline to amend the pleadings
could not have been reasonably met." Levy v. Young Adult Inst.,
Inc., No. 13 Civ. 2861 (JPO) (SN), 2014 WL 6611454, at *3
(S.D.N.Y. Nov. 21, 2014) (citing Parker v. Columbia Pictures
Indus., 204 F.3d 326, 340 (2d Cir. 2000)). "A party fails to
show good cause when the proposed amendment rests on information
'that the party knew, or should have known, in advance of the
deadline.'" Id. (quoting Perfect Pearl Co., Inc. v. Majestic
Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)).

Plaintiff has not demonstrated reasonable diligence.
According to Plaintiff, its allegations of pre-2008 damages by
Defendant's conduct, were discovered through fact discovery. See
Pl.'s Mem. at 1, 3, 8. The deadline for fact discovery was April
2013, months before the November 2013 deadline to amend.
Plaintiff does not put forward a "satisfactory reason," Williams

v. Town of Hempstead, No. 16 Civ. 1992 (ADS) (AYS), 2017 WL
4712219, at \*3 (E.D.N.Y. Oct. 18, 2017), why it could not have
added those and other allegations it now contends "clarify" its
claims prior to that date. See, e.g., McCarthy v. Dun &
Bradstreet Corp., 482 F.3d 184, 201 (2d Cir. 2007) (good cause
not met when "Plaintiffs became aware of the need to consider a
possible claim . . . more than seven months before moving to
amend their complaint"); iMedicor, Inc. v. Access Pharm., Inc.,
290 F.R.D. 50, 53 (S.D.N.Y. 2013) (good cause not met because
plaintiff was aware of requisite information eight months before
its motion to amend).

Nevertheless, while good cause for the delay in seeking the
amendment has not been established, certain of the proposed
amendments may serve to clarify issues to be presented. In an
exercise of discretion, further consideration to the proposed
SAC will be given despite Plaintiff's failure to meet the Rule
16(b) diligence standard. See Fed. R. Civ. P. 16(b); see also
Kassner, 496 F.3d at 244 (although "the primary consideration is
whether the moving party can demonstrate diligence . . . the
district court, in the exercise of its discretion under Rule
16(b), also may consider other relevant factors including, in
particular, whether allowing the amendment of the pleading at
this stage of the litigation will prejudice defendants").

10

III. The Amendment Striking the Admission that the Agreements Restated in June 2008 were the Operative Documents is Denied

Part of Plaintiff's proposed SAC changes the FAC's Paragraph 39, which describes "a set of agreements entered into on or about June 30, 2008 (the "Ocala Agreements")" by striking the phrase immediately following it, "which then became the operative documents." FAC ¶ 39. Defendant contends that removing this line from the FAC would contradict Plaintiff's admission in the FAC that the 2008 Agreements were, in fact, the operative documents and would add new claims arising out of alleged breaches by Defendant of the 2005 and 2006 Agreements. Plaintiff avers that it is not denying that the 2008 Agreements remain the operative documents but remain entitled to recover damages from pre-2008 agreement breaches.

In BNP I, it was found that claims arising under the 2005 and 2006 Agreements and based on BoA's conduct prior to June 30, 2008, were extinguished upon the contract's restatement in 2008. See BNP I, 778 F. Supp. 2d at 401-02. Discovery proceeded, guided by that opinion and the Plaintiff's admissions in its FAC. At this point, that the 2008 Agreements are the operative documents is settled.

11

The language Plaintiff proposes to strike unmoors

Plaintiff's position from what was previously and clearly stated

and towards one "not clearly alleged" in its FAC. Baez v. Delta

Airlines, Inc., No. 12 Civ. 3672 (KPF), 2013 WL 5272935, at *6

(S.D.N.Y. Sept. 18, 2013). Plaintiff is bound to its admission

and course of conduct thus far. See In re Gen. Elec. Co. Sec.

Litig., No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at *3 (S.D.N.Y.

July 12, 2012) ("Having made a tactical decision to pursue a

particular legal theory . . . Plaintiffs will not be excused

from the necessary consequences of this decision."); Tiffany

(NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 460, 461 (S.D.N.Y.

2007) (citation omitted) ("The purpose of notice pleading is to

provide the defendant with 'fair notice of what the plaintiff's

claim is and the grounds upon which it rests.'"). Accordingly,

Plaintiff's proposed amendment to strike this language is

denied.

IV.   The Amendment to Add the Allegation in the 2008
      Restated Agreement Lacked Natixis Consent is Denied

Plaintiff's proposed SAC also seeks to add language to the

FAC's Paragraph 39 that the 2008 Agreement were amended and

restated "without Natixis' input or consent." SAC ¶ 33.

Defendant argues that to add this allegation would be

12

prejudicial because it would require more fact discovery of the parties involved in the amended and restated agreements to establish consent. Plaintiff denies that additional discovery would be needed if the amendment is granted.

As an aside, this sought addition is puzzling. At no time during discovery was the issue of Natixis' consent to the 2008 restated agreement considered, presumably because no such consent has been alleged as required. To date, the relevance of any consent by Natixis to the 2008 Agreements has not been established. Even Plaintiff appears to concede the benefit of including this clause is non-existent. See Pl.'s Opp. at 5 ("Indeed, striking it [the lack of consent language] from the SAC would have no impact whatsoever.").

On the other hand, Defendant's argument has some heft. To the extent that Plaintiff's consent to the 2008 Agreement becomes a point of contention at this stage of the litigation, there is prejudice in the delay of the amendment. See MacDraw, Inc. v. CIT Group Equip. Fin., 157 F.3d 956, 962 (2d Cir. 1998) (affirming denial of leave to amend where motion was filed after the close of discovery, additional discovery would be required, and delay was unexplained); Baez, 2013 WL 5272935, at *7 ("Prejudice may be found if the amendment is sought after

13

discovery has already closed."). While it is unclear whether the extent of any additional discovery needed by Defendant would be significant—although Defendant contends as much—at minimum, the length of time since the 2008 Agreement negotiations increases the prejudice of any late-game discovery, of which there is likely to be some. See Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (discussing undue prejudice caused by proposed amendment because "[w]itnesses . . . may not be available" and. "[e]ven if the knowledgeable witnesses are available, their recollection of events will undoubtedly be diminished compared to two years earlier").

When deciding between whether to include an amendment unduly delayed and that creates the possibility of prejudicial discovery or to exclude an amendment lacking clear value, discretion favors the latter option. As such, Plaintiff's proposed amendment with respect to Natixis' consent is denied.

V.    The Amendments to Allege Breaches of the 2005 and 2006 Agreements is Granted

The proposed SAC makes many additional changes to the FAC that incorporate facts about Defendant's relationship with Ocala and that broadly shift the framing of the contractual relationship from 2008 back to 2005. See SAC ¶¶ 17-18, 37, 45,

14

82-86, 99, 106, 122. Defendant contends that these inclusions are an attempt to expand the scope of Plaintiff's allegations beyond what was fairly alleged in the FAC to include claims for damages prior to the 2008 Agreements. Plaintiff responds that pre-2008 facts and breaches have always been part of its allegations and these amendments break no new ground.

While Natixis now seeks to allege that conduct breached the terms of the 2005 and 2006 agreements, Defendant's statement that such a change "might" require further discovery is unconvincing, unlike other instances of additional discovery, already discussed. Def.'s Opp. at 16 n.11. Here, the facts as to Defendant's conduct over Ocala's lifespan added by Plaintiff in its proposed SAC have been the subject of the parties' discovery. Moreover, evidence sought to be shown by Plaintiff to that effect could be relevant as background and to explain the events of 2009 which caused the default event under the terms of the subordinated notes, in spite of the fact that no damages have been clearly alleged or established as occurring at the time of the conduct alleged. On balance, therefore, leave to incorporate these proposed amendments is granted. See Kassner, 496 F.3d at 244.

15

VI.  The Remaining Amendments to Eliminate Causes of Action
     and to Clarify Language are Granted

Lastly, the proposed SAC removes the causes of action for

breach of the Base Indenture and breach of fiduciary duty and

adds additional details to Plaintiff's remaining allegations,

which Plaintiff contends brings the pleading in line with

discovery taken to date. See Pl.'s Reply Mem. of Law in Further

Supp. ("Pl.'s Reply") at 1 n.2. Defendant does not oppose the

withdrawal of the two claims, Def.'s Opp. at 1 n.2. 17, and has

acknowledged that the various other, remaining changes are

"relatively minor," id. at 8 n.5. Accordingly, leave to

incorporate these remaining proposed amendments is granted.

## Conclusion

For the reasons set forth above, Plaintiff's motion for leave to file its SAC is granted in part and denied in part.

It is so ordered.

**New York, NY**
**February / , 2018**

_____
**ROBERT W. SWEET**
**U.S.D.J.**